The **NATIONAL ETHICAL PHARMACEUTICAL ASSOCIATION** and Pharmaceutical Associates, Inc., Plaintiffs,

v.

Casper W. **WEINBERGER**, as Secretary of Health, Education, and Welfare of the United States of America, and Alexander M. Schmidt, M.D., as Acting Commissioner of the Food and Drug Administration, Defendants.

Civ. A. No. 73–560.

United States District Court,
D. South Carolina,
Greenville Division.

Sept. 27, 1973.

George F. Townes, and Sol E. Abrams, of Abrams, Bowen & Townes, Greenville, S.C., for plaintiffs in both actions.

John K. Grisso, U.S. Atty., for the District of South Carolina, Columbia, S. C., and James D. McCoy, III, Asst. U.S. Atty., Greenville, S.C., for defendant in each case.

## ORDER

HEMPHILL, District Judge.

Defendants have moved to dismiss the complaint on the grounds that the Food and Drug Administration has primary jurisdiction to determine whether a drug is a "new drug", as the Supreme Court held in Weinberger v. Bentex Pharmaceuticals, Inc., 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973).[1] Plaintiffs do not contest the fact that such primary jurisdiction lies with the FDA, but oppose dismissal, asserting that the complaint raises an issue of law which should be decided in the first instance by this court. The Food and Drug Administration has evaluated certain drugs and concluded, by announcement in the Federal Register, that such drugs are effective for use under specified conditions and labeling. Such announcements have provided that persons wishing to market such drugs may do so by filing an "abbreviated" new drug application, without including evidence of the drugs' safety and effectiveness so long as the labeling complies with the implementing Federal Register announcement. Plaintiffs allege that as a matter of law, these drugs are not "new drugs", and seek judicial declaration to this effect.

However, any such determination that such drugs are "new" or "old" requires a determination as to whether they are generally recognized, among qualified experts, as safe and effective for their intended uses. 21 U.S.C. § 321(p); Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 93 S.Ct. 2469, 2482–2483, 37 L.Ed.2d 207 (1973). Since the actual safety and/or

[1]. "We conclude that the District Court's referral of the "new drug" and the "grandfather" issues to FDA was appropriate, as these are the kinds of issues peculiarly suited to initial determination by the FDA * * * The determination of whether ‚a drug is generally recognized as safe and effective within the meaning of § 201(p)(1) [21 U.S.C. § 321(p)(1)] necessarily implicates complex chemical and pharmacological considerations. Threshold questions within the peculiar expertise of an administrative agency are appropriately routed to the agency, while the court holds its hand." [93 S. Ct. 2494, 37 L.Ed.2d 242].

efficacy of a drug is irrelevant to whether its safety and efficacy is generally recognized among qualified experts, AMP v. Gardner, 389 F.2d 825 (CCA 2, 1968), cert. den. 393 U.S. 825, 89 S.Ct. 86, 21 L.Ed.2d 95 (1968), an announcement by FDA or any other person as to the actual effectiveness of a drug is not determinative, and is indeed irrelevant, to the ultimate issue raised by the complaint.

 Therefore, with respect to each drug named in the complaint, there must be a determination of whether they have "mustered the requisite scientifically reliable evidence of [safety and] effectiveness . . . before they are in a position to drop out of active regulation by ceasing to be a 'new drug'." Weinberger v. Hynson, Westcott & Dunning, Inc., supra, 93 S.Ct. at 2484. This is precisely the issue which the Supreme Court, in *Hynson,* supra, and *Bentex,* supra, held to be within the primary jurisdiction of the Food and Drug Administration, as the "more able arbiter," of complex scientific and medical determinations. Plaintiffs may petition the Food and Drug Administration, pursuant to the Administrative Procedure Act, to determine if the drugs named in their complaint are "new drugs". Following the administrative determination, plaintiffs may then seek judicial review if they so desire, and at that time may raise the fact of the prior Food and Drug Administration announcements. Weinberger v. Bentex Pharmaceuticals, Inc., supra.[2]

Having carefully considered the matter, this court is of the opinion that it should, in the exercise of its sound discretion under the Declaratory Judgment Act, refuse to take jurisdiction and dismiss the action. Public Service Commission of Utah v. Wycoff, 344 U.S. 237, 241, 246, 73 S.Ct. 236, 97 L.Ed. 291 (1952); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Cf. Abbott Laboratories v. Gardner, 387 U.S. 136, 155, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1952).

Accordingly, defendants' Motion to Dismiss is hereby granted, without prejudice.

And it is so ordered.

---

2. Its [FDA] determination that a product is a "new drug" or a "me-too" drug is, of course, reviewable. But the jurisdiction to determine whether it has jurisdiction is as essential to its effective operation as is a court's like power. Cf. United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319. The heart of the new procedures designed by Congress is the grant of primary jurisdiction to FDA, the expert agency which it created. FDA does not have the final say, for review may be had not in a district court, * * * but in a court of appeals. FDA does not have unbridled discretion to do what it pleases. Its procedures must satisfy the rudiments of fair play. Judicial relief is available only after administrative remedies have been exhausted. [93 S.Ct. 2488, 37 L.Ed.2d at page 222].