IMS LIMITED, d/b/a International Medication Systems Ltd., a corporation of Delaware, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, and Donald Kennedy, Commissioner of the Food and Drug Administration, Defendants.

Civ. No. 77-2552-RJK.

United States District Court, C. D. California.

Nov. 28, 1977.

Joseph E. Mueth, Wills, Green & Mueth Law Corp., Los Angeles, Cal., for plaintiff.

Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, District Judge.

Plaintiff filed a complaint on July 11, 1977, seeking a declaratory judgment that a certain drug (furosemide) is not a "new drug" within the meaning of §§ 201 and 505 of the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 321(p) and 355, so as to require plaintiff to file with and obtain approval of a new drug application (NDA) from the FDA. The complaint also seeks injunctive relief restraining the FDA from proceeding against plaintiff's stocks of furosemide by way of libel and condemnation.

On June 13, 1977, the District Director for the Los Angeles District of the FDA sent plaintiff drug manufacturer a letter which stated that a recent inspection of plaintiff's firm indicated that plaintiff was in violation of § 505 of the Act in that the furosemide plaintiff was found to be importing was a "new drug" as to which plaintiff had failed to file and obtain approval of an NDA. The letter requested plaintiff to contact the FDA within ten days, stating the action plaintiff proposed to take to correct the violation, and threatened the invocation of regulatory sanctions should plaintiff fail to respond.

Apparently plaintiff's response was to file this lawsuit. Plaintiff contends that furosemide is not subject to the § 505 pre-marketing clearance procedures in that it is not a "new drug" within the meaning of § 201(p). The definition of "new drug" specifically exempts any drug which is "generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labelling thereof . . ." Plaintiff contends that furosemide is just such a "generally recognized" drug, having been used "routinely" throughout the United States and the world for over ten years

and having been recognized as safe and effective by qualified experts.

The basis for the FDA's new drug classification is plaintiff's use of its patented Min-I-Jet delivery system for injecting furosemide in lieu of a glass ampule system utilized by the only other drug manufacturer marketing furosemide in the United States. Under the FDA's regulations:

(h) The newness of a drug may arise by reason (among other reasons) of:

. . . . .

(5) The newness of a dosage, or method or duration of administration or application, or other condition of use prescribed, . . . even though such drug when used in other dosage, or other method or duration of administration or application, or different condition, is not a new drug.

21 C.F.R. § 310.3(h)(5).

Although plaintiff does not actually cite this regulation, its action must be seen as an attack at least on the FDA's application of this regulation in this instance. Plaintiff claims that since 1969 plaintiff has converted other drugs (sodium bicarbonate and epinephrine) to its Min-I-Jet system, that other such drugs were "generally recognized . . . as safe and effective" and thus not "new drugs," that the FDA knew that plaintiff was so doing, and that the FDA neither classified plaintiff's products as "new drugs" nor requested that plaintiff file NDA's. Thus, it is argued, the FDA's present classification is arbitrary or at least inconsistent.

The FDA filed the instant motion to dismiss or, alternatively, for summary judgment on September 12, 1977.

■ The motion is granted, without prejudice. The basis for this disposition is primary jurisdiction of the FDA to resolve the jurisdictional question (i. e., whether plaintiff's product constitutes a "new drug" requiring filing and approval of an NDA), absence of final agency action so as to permit district court review under the Administrative Procedure Act (APA), 5 U.S.C.

§§ 701–704, and failure of plaintiff to exhaust administrative remedies.

The issue of primary jurisdiction to determine the status of a drug product as a "new drug" received the attention of the Supreme Court in 1973 in a series of cases interpreting the 1962 Amendments to the Food, Drug and Cosmetic Act. In *Weinberger v. Hynson, Westcott and Dunning, Inc.*, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973), petitioner drug companies had argued that while the FDA had jurisdiction to approve, deny, or withdraw previously-approved NDA's, only the district court had jurisdiction to determine whether or not a particular product constituted a "new drug." The Court flatly rejected the contention, holding that the FDA has authority to determine just such an issue. *Id.* at 624, 93 S.Ct. at 2480. The Court noted that under 5 U.S.C. § 554(e) the FDA had power to issue a declaratory order "to terminate a controversy or remove uncertainty."

> If the administrative controls over drugs are to be efficient, they must be exercised with dispatch. Only paralysis would result if case-by-case battles in the courts were the only way to protect the public against unsafe or ineffective drugs.

*Id.* at 626, 93 S.Ct. at 2481.

Noting that "the heart of the new procedures designed by Congress is the grant of primary jurisdiction to FDA," the Court observed that judicial relief would be available only after administrative remedies had been exhausted. *Id.* at 627, 93 S.Ct. at 2482.

In *Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973), the Court ruled that the parties could not confer jurisdiction upon the district court to determine "new drug" status, but that a declaratory order of the FDA determining a given product to be a "new drug" was reviewable in the district court pursuant to APA, 5 U.S.C. §§ 701–704. *Id.* at 651, 93 S.Ct. at 2493, citing

*Hynson, supra*, 412 U.S. at 627, 93 S.Ct. at 2481.[1] In *Bentex* the district court had referred the issue of "new drug" status to the FDA for initial determination. The Supreme Court, in affirming this referral, emphasized that

> these are the kinds of issues peculiarly suited to initial determination by the FDA. As the District Court said: "Evaluation of conflicting reports as to the reputation of drugs among experts in the field is not a matter well left to a court without chemical or medical background."

*Id.* at 653, 93 S.Ct at 2494.

 Plaintiff claims that the June 13, 1977 letter from the District Director of the Los Angeles District of the FDA constitutes "final agency action" for purposes of APA and that plaintiff has exhausted its administrative remedies, as required by *Hynson*. While having a certain superficial appeal, the contentions are without merit. In *Ciba Corp. v. Weinberger*, 412 U.S. 640, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973), the Supreme Court stated that "where there has been no *formal* administrative determination of the 'new drug' issue, it being first tendered to a district court [e]ven then . . . the district court might well stay its hand, awaiting an *appropriate* administrative determination of the threshold question." *Id.* at 644, 93 S.Ct. at 2498 (emphasis supplied). The suggestion that the agency determination must in some way reflect formal, in the sense of properly presented and considered, judgment accords with the rationale underlying the entire series of opinions. In *National Pharmaceutical Association v. Weinberger*, 503 F.2d 1051, 1052 (4th Cir. 1974), the court held that judicial review was available only after a formal administrative ruling and that the district court had demonstrated sound exercise of discretion in dismissing without prejudice and ordering plaintiff to petition for and obtain a formal administrative ruling with respect to the

---

1. The Court distinguished this from the review in the Court of Appeals of an FDA denial or withdrawal of an NDA provided by § 505(h), 21 U.S.C. § 355(h).

status of certain drugs. It seems clear that the type of informal letter issued by the FDA, apparently without having first conducted any tests, does not constitute the kind of formal or final agency action the Supreme Court had in mind. Moreover, the agency's regulations expressly state that meetings and correspondence do not constitute final administrative action which is subject to judicial review. 21 C.F.R. § 10.65(a). Finally, as pointed out above, it is incorrect for plaintiff to state that it has no intra-agency avenue of review to test the District Director's demand and that therefore it has exhausted its administrative remedies. Under 21 C.F.R. § 10.25(a), plaintiff may "petition the Commissioner to issue, amend, or revoke a regulation or order, or to take or refrain from taking any other form of administrative action . . ." And the petition may, at plaintiff's option, take the form of a citizen's petition under 21 C.F.R. § 10.30, which rebuts plaintiff's claim that to require plaintiff to file an NDA in order to test the question of the very need to file an NDA is self-defeating. Primary jurisdiction to determine whether plaintiff's product is a "new drug" lies with the FDA, with review of its formal determination available in the district court under APA.

Accordingly, IT IS ORDERED that the motion to dismiss is granted, without prejudice.

The Clerk shall send, by United States mail, a copy of this Memorandum of Decision and Order to counsel for all parties.