BIOTICS RESEARCH CORPORATION,
et al., Plaintiffs-Appellants,

v.

Margaret HECKLER,* Sec'y etc., et al.,
Defendants-Appellees.

SEROYAL BRANDS, INC., et al.,
Plaintiffs-Appellants,

v.

Margaret HECKLER,* Sec'y etc., et al.,
Defendants-Appellees.

Nos. 82–5325, 82–5412.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1982.

Decided July 5, 1983.

---

* We substitute Margaret Heckler, the Secretary of Health and Human Services, as successor to the original appellee pursuant to Fed.R.App.P. 43.

Kirkpatrick W. Dilling, Dilling, Dilling & Groneck, Chicago, Ill., for plaintiffs-appellants.

Barry Grossman, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before WALLACE and FERGUSON, Circuit Judges, and GRANT,** District Judge.

WALLACE, Circuit Judge:

Biotics Research Corporation (Biotics) and Seroyal Brands, Inc. (Seroyal) appeal from district court orders dismissing their complaints for injunctive and declaratory relief against the Food and Drug Administration (FDA). We are asked to decide whether a "regulatory letter" in which the FDA states that a firm has violated laws it administers and threatens enforcement action constitutes a final agency determination ripe for judicial review under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. We find that it does not and therefore affirm.

## I

Biotics manufactures and distributes tablets labeled "Interferon-Plus." Seroyal distributes and markets a product labeled " 'Raw'-Thyroid Tablets."

Following an investigation, the FDA sent regulatory letters to Biotics and Seroyal stating that they were violating certain enumerated federal statutes and threatening enforcement action if they did not initiate corrective measures. The letter to Biotics stated that its product "Interferon-Plus" was a "biological product" and a drug and that the firm was in violation of section 351(a) of the Public Health Service Act, 42

** Honorable Robert A. Grant, United States District Judge, Northern District of Indiana, sitting

U.S.C. § 262(a), and various subsections of section 502 of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 352. The letter to Seroyal declared that its " 'Raw'-Thyroid Tablets" were drugs and prescription drugs within the meaning of the Food, Drug, and Cosmetic Act and that the product was misbranded in violation of various subsections of sections 403, 502, and 503 of the Act, 21 U.S.C. §§ 343, 352 & 353.

In response to these letters, Biotics and Seroyal independently filed actions in the district court seeking declaratory judgments that the FDA's actions were illegal and unauthorized and requesting injunctions against the threatened enforcement actions. Biotics and Seroyal both argued that their products are "foods" or "foods for special dietary use" and not drugs or biological products. The FDA moved to dismiss the actions. Biotics and Seroyal opposed the motions and requested oral argument. Biotic's request was granted and a hearing date set. However, before any argument occurred, the district court granted the FDA's motions to dismiss, ruling that because regulatory letters do not constitute "formal administrative determinations," the court had no jurisdiction to review the FDA action. Biotics and Seroyal filed timely notices of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

The Supreme Court has ruled that while the federal courts and the FDA share concurrent jurisdiction to determine whether a drug sought to be marketed constitutes a "new drug" subject to the provisions of the Food, Drug, and Cosmetic Act, the FDA has primary jurisdiction. *See Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 627, 93 S.Ct. 2469, 2481–2482, 37 L.Ed.2d 207 (1973) (*Hynson*). The basis for the grant of primary jurisdiction is the FDA's expertise in resolving technical and scientific questions. *Ciba Corp. v. Weinberger,* 412 U.S. 640, 643–44, 93 S.Ct. 2495,

by designation.

2497–2498, 37 L.Ed.2d 230 (1973) (*Ciba*); *Weinberger v. Bentex Pharmaceuticals, Inc.,* 412 U.S. 645, 653–54, 93 S.Ct. 2488, 2494, 37 L.Ed.2d 235 (1973) (*Bentex*). When the FDA has primary jurisdiction to determine the status of a product, one seeking to contest the agency's determination must exhaust all administrative remedies before seeking judicial review. *See Hynson,* 412 U.S. at 627, 93 S.Ct. at 2481–2482; *Carnohan v. United States,* 616 F.2d 1120 (9th Cir.1980). It is thus appropriate for a district court to stay its hand pending a final agency determination of the question. *Ciba,* 412 U.S. at 644, 93 S.Ct. at 2498; *Bentex,* 412 U.S. at 654, 93 S.Ct. at 2494; *see* 5 U.S.C. § 704 (Administrative Procedure Act).

■ Biotics and Seroyal attempt to distinguish its case, where the relevant question is whether their products should be labeled as drugs, as biological products, or as foods, from cases like *Hynson,* where the relevant question was whether an admitted drug constituted a new drug within the meaning of the Food, Drug, and Cosmetic Act. This factual difference does not amount to a legal distinction. Classification of a product as a drug, biological product, or food involves the same "complex chemical and pharmacological considerations," *Bentex,* 412 U.S. at 654, 93 S.Ct. at 2494, and "determination of technical and scientific questions," *Ciba,* 412 U.S. at 644, 93 S.Ct. at 2498, that led the Supreme Court to conclude that new drug decisions are best left to agency expertise. We therefore conclude that it is appropriate for a district court to decline reviewing anything less than a final administrative determination on the classification of a product as a drug, biological product, or food. *Accord National Ethical Pharmaceutical Association v. Weinberger,* 503 F.2d 1051 (4th Cir.1974) (holding that judicial review of question whether product constitutes new drug should be withheld until after plaintiffs obtain a formal administrative ruling), *aff'g* 365 F.Supp. 735 (D.S.C.1973).

The only remaining question is whether the regulatory letters sent to Biotics and Seroyal constitute final administrative determinations subject to judicial review. We are assisted by the reasoning in *IMS Ltd. v. Califano,* 453 F.Supp. 157 (C.D.Cal.1977). The plaintiff drug manufacturer in that case filed an action for declaratory relief after receiving a letter from the FDA stating that the plaintiff was in violation of the Food, Drug, and Cosmetic Act for marketing a new drug without filing and obtaining approval of a new drug application. The court dismissed the complaint, citing the FDA's primary jurisdiction over the status determination, the absence of final agency action allowing district court review under the Administrative Procedure Act, 5 U.S.C. §§ 701–704, and the plaintiff's failure to exhaust administrative remedies. *Id.* at 158–60. The court stated that "the type of informal letter issued by the FDA, apparently without having first conducted any tests, does not constitute the kind of formal or final agency action the Supreme Court had in mind [in *Hynson, Bentex,* and *Ciba*]." *Id.* at 160. The court also observed that FDA regulations specifically state that meetings and correspondence do not constitute final administrative action subject to judicial review. *Id.; see* 21 C.F.R. § 10.65(a). Finally, the district court pointed out that the drug manufacturer could petition the Commissioner of Food and Drugs for the desired administrative action. 453 F.Supp. at 160; *see* 21 C.F.R. §§ 10.25, 10.30.

Although it is unclear whether the letter in *IMS Ltd. v. Califano* was labeled a regulatory letter, it contained a similar threat of regulatory sanctions for violations of the Food, Drug, and Cosmetic Act. 453 F.Supp. at 158. We are persuaded by the reasoning of *IMS Ltd. v. Califano* and find it applicable to the declaratory relief actions brought by Biotics and Seroyal.

Biotics and Seroyal cite the FDA's own Regulatory Procedures Manual, which defines a regulatory letter and states in essence that it is not sent to a company unless the FDA is prepared to carry out its threats. They argue that such a letter constitutes a final agency determination as to

the status of their products because enforcement is imminent upon issuance of the letter.

We disagree that the regulatory letters issued to Biotics and Seroyal constitute a final decision by the FDA. The letters do contain conclusions by subordinate officials of the FDA that products offered by Biotics and Seroyal are in violation of federal law and also indicate a readiness on the part of the FDA to initiate enforcement procedures if corrective measures are not taken. As the Secretary points out, however, such letters do not commit the FDA to enforcement action. Moreover, the availability of relief within the agency refutes the argument that the agency determination is final. FDA regulations expressly provide that a firm may "petition the Commissioner to issue, amend, or revoke a regulation or order, or to take or refrain from taking any other form of administrative action." 21 C.F.R. § 10.25(a). The petition may take the form of a citizen's petition under *id.* § 10.30. The Commissioner's decision on such a petition, which must be made within 180 days of the filing thereof, *id.* § 10.-30(e)(2), is reviewable in federal court as final agency action, *id.* § 10.45(d), with an appropriate administrative record having been developed, *see id.* § 10.30(i).

Biotics and Seroyal admit failing to take advantage of this available administrative remedy, but argue that the administrative remedy is "inadequate and not efficacious" and that its pursuit would have been a "futile gesture." Although we recognize an exception to the exhaustion requirement under these circumstances, *see Aleknagic Natives Ltd. v. Andrus,* 648 F.2d 496, 499 (9th Cir.1980), there is nothing in the record to indicate that a citizen's petition to the Commissioner would have been ineffective or futile. We therefore reject this argument.

None of the cases cited by Biotics and Seroyal lead us to a contrary conclusion. They mistakenly rely upon language in *United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 439–40 (9th Cir.1971), to the effect that parties need not take all intra-agency appellate steps available before requesting judicial review. In that case we expressly limited our holding to mining claims cases involving the Department of the Interior and stated that our decision "does not apply to the rule of exhaustion of remedies as it may appear in other decisions of this court, involving other agencies." *Id.* at 452. Several decisions of the Supreme Court demonstrate that the traditional exhaustion requirement applies to one seeking judicial review of FDA status determinations. *See, e.g., Hynson,* 412 U.S. at 627, 93 S.Ct. 2481–2482; *Ciba,* 412 U.S. at 644, 93 S.Ct. at 2498; *Bentex,* 412 U.S. at 653–54, 93 S.Ct. at 2494.

Biotics and Seroyal cite several out-of-circuit cases in which courts apparently have entertained claims for declaratory relief following issuance by the FDA of a regulatory letter or similar pronouncement. *See AMP Inc. v. Gardner,* 275 F.Supp. 410 (S.D.N.Y. 1967), *aff'd,* 389 F.2d 825 (2d Cir.1968), *cert. denied,* 393 U.S. 825, 89 S.Ct. 86, 21 L.Ed.2d 95 (1968); *Premo Pharmaceutical Laboratories, Inc. v. United States,* 629 F.2d 795, 801 (2d Cir.1980) *(Premo ); Natick Paperboard Corp. v. Weinberger,* 498 F.2d 125, 128–29 (1st Cir.1974) *(Natick).* These cases, however, do not necessarily support Biotics's and Seroyal's conclusion that the district court should have exercised its jurisdiction here. Because of concessions made in *AMP Inc. v. Gardner,* neither the administrative finality of the FDA regulatory letter nor district court jurisdiction were expressly in issue. 275 F.Supp. at 413. To the extent that the case holds that FDA regulatory letters constitute final agency determinations, we reject it. While the courts in *Natick* and *Premo* both recognized district court jurisdiction to grant declaratory relief in cases involving FDA status determinations of products under the Food, Drug, and Cosmetic Act, neither held that the district court must exercise declaratory jurisdiction. The cases are not inconsistent with our holding as we do not construe them as departures from the accepted practice of consigning questions of declaratory jurisdiction and relief to the sound discretion of the

district judge. *See McGraw-Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339, 342 (9th Cir.), *cert. denied,* 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966).

### III

The Secretary moved to dismiss Biotics's and Seroyal's complaints under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim for which relief can be granted). In ruling on the motions, the district court considered the regulatory letters received by Biotics and Seroyal and a chapter of the FDA Regulatory Procedures Manual in addition to the pleadings. Biotics and Seroyal argue that the district court's consideration of these outside materials served to convert the government's motion to dismiss for failure to state a claim into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Under these circumstances, Biotics and Seroyal argue that it was error for the court to dismiss their complaints without holding hearings pursuant to Nevada District Court Local Rule 16(g), which provides that all motions for summary judgment "may ... be ... decided ... without a hearing, unless a hearing is requested ...." *See Jasinski v. Showboat Operating Co.,* 644 F.2d 1277, 1279–80 & nn. 3–4 (9th Cir.1981); *see also Dredge Corp. v. Penny,* 338 F.2d 456, 461–62 (9th Cir.1964).

We find no error. The government's motions to dismiss were only nominally based on rule 12(b)(6) for failure to state a claim. Subject matter jurisdiction was the real issue. Moreover, it is clear that the district court's decision to dismiss was based solely on a lack of subject matter jurisdiction. We therefore view the material objected to as having been introduced pursuant to a motion to dismiss for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1). The district court therefore did not abuse its discretion in deciding the issue without entertaining oral argument. *See* 5 C. Wright & A. Miller,

*Fed. Practice & Procedure* § 1190, at 33 (1969).

AFFIRMED.