BEEZER, Circuit Judge:
 

 We consider whether the Food and Drug Administration’s classification of dietary supplement Co-enzyme Q10 (“CoQlO”) is an issue ripe for judicial review. The district court dismissed plaintiff’s action for declaratory judgment on the grounds that 1) the issue raised was not purely legal; 2) the challenged action was not final; and 3) the plaintiffs had not exhausted their administrative remedies, 796 F.Supp. 441. Plaintiffs timely appeal. We affirm.
 

 I
 

 Plaintiffs-appellants are a coalition of dietary supplement manufacturers, known as the Dietary Supplement Coalition, and an Oregon dietary supplement distributor called the Health Haus, Inc. (referred to collectively as “DSC”).
 

 In 1989, the Food and Drug Administration (“FDA”) initiated two proceedings to seize bottles of CoQlO from Natural Organics, Inc., and Bio-Energy Nutrient, Inc., both member companies of DSC. The FDA stated that under the provisions of the Food and Drug Act, 21 U.S.C. § 321(sj (1988), CoQlO was an unsafe food additive because no FDA regulation prescribed the conditions under which it could be safely used. The FDA also issued regulatory letters concerning CoQlO informing recipients that CoQlO was an unapproved food additive whose continued marketing subjected its sellers to enforcement actions.
 

 DSC filed an action in district court for declaratory judgment. DSC claims that their products which contain CoQlO are “foods” and not “food additives,” or are “generally recognized as safe” within the meaning of the Food and Drug Act.
 

 The district court granted the government’s motion to dismiss, holding that the issues presented were not ripe for judicial review. DSC appeals, claiming that despite the lack of a formal pronouncement on the general status of CoQlO, the FDA has made a decision regarding the product’s classification that is sufficiently final for the purpose of judicial review.
 

 II
 

 A ruling on subject matter jurisdiction is a question of law subject to
 
 de novo
 
 review.
 
 Winter v. Calif. Medical Review, Inc.,
 
 900 F.2d 1322, 1324 (9th Cir. 1990). In determining ripeness issues, we evaluate “both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.”
 
 Id.
 
 at 1325;
 
 see also Abbott Lab. v. Gardner,
 
 387 U.S. 136, 149, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967). The fitness element requires that the issue be primarily legal, need no further factual development, and involve a final agency action.
 
 Winter,
 
 900 F.2d at 1325. To meet the hardship requirement, a party must show that withholding 'judicial review would result in direct and immediate hardship and would entail more than possible financial loss.
 
 Id.
 

 DSC says that the FDA has made a final determination regarding the classification of CoQlO. We first consider the element of the ripeness inquiry requiring “final agency action.”
 

 In interpreting the finality requirement, we look to whether the agency action represents the final administrative work. This requirement insures judicial review will not interfere with the agency’s decision-making process.
 
 Winter,
 
 900 F.2d at 1324-25. The finality element must be interpreted in a “pragmatic” and “flexible” manner.
 
 Abbott Lab.,
 
 387 U.S. at 149-50, 87 S.Ct. at 1516.
 

 In support of its argument that the FDA has taken final administrative action, DSC points to the seizure actions, the FDA regulatory letters, and the testimony of an FDA expert in a separate case. Because the expert testimony was not before the district court, it is not a part of the record on appeal.
 
 See Kirshner v. Uniden Corp. of America,
 
 842 F.2d 1074, 1077 (9th Cir.
 
 *563
 
 1988); Fed.R.App.P. 10(a); Ninth Cir.R. 10-2.
 

 We have held that regulatory letters do not constitute final agency action.
 
 See Biotics Research Corp. v. Heckler,
 
 710 F.2d 1375, 1377 (9th Cir.1983) (“ ‘[T]he type of informal letter issued by the FDA ... does not constitute the kind of formal or final agency action the Supreme Court had in mind____’”) (quoting
 
 IMS Ltd. v. Califano,
 
 453 F.Supp. 157, 160 (C.D.Cal.1977));
 
 see also Estee Lauder, Inc. v. United States Food and Drug Admin.,
 
 727 F.Supp. 1, 5 (D.D.C.1989) (FDA regulatory letter was “informal and advisory” and did not constitute final agency action).
 

 DSC seeks to analogize this case to
 
 Ciba-Geigy Corp. v. EPA,
 
 801 F.2d 430 (D.C.Cir.1986). In
 
 Ciba-Geigy,
 
 the EPA sent a letter detailing the agency’s position regarding certain procedures required for labeling changes. The district court held that this letter was sufficiently final and ripe for review even before EPA enforcement of its position.
 
 Id.
 
 at 434. However,
 
 Ciba-Geigy
 
 involved a dispute over procedure and not product classification. Because classification requires agency expertise,
 
 Ciba-Geigy
 
 is inapposite to the case at hand.
 

 There is a split in authority as to whether seizure actions constitute final agency action.
 
 [1]
 
 The district court distinguished the cases in favor of DSC’s position on the grounds that, in each case, the FDA had come to a definitive position. DSC disagrees, contending that in neither case had the FDA made a final decision regarding the product’s classification.
 

 While DSC correctly points out that the FDA had not come to a final conclusion as to product classification in
 
 Premo
 
 and
 
 Na-tick,
 
 in both cases the agency had taken an explicit position as to the product at issue. In
 
 Premo,
 
 the agency had considered and refused to approve an application from plaintiff Premo to market the drug at issue.
 
 Premo,
 
 629 F.2d at 799. In
 
 Natick,
 
 the agency had already published a regulation banning Natick’s food packaging material as violative of the Act.
 
 Natick,
 
 498 F.2d at 126. In the present case, the FDA has made no statement regarding CoQlO in general; only its use in certain products' has been challenged.
 

 The only “agency statement” DSC can point to regarding the general use of CoQlO is the previously rejected expert testimony. Even under Abbott’s “pragmatic and flexible” approach to determining finality, specific product seizures do not amount to final agency action regarding
 
 any
 
 use of CoQlO.
 
 [2]
 

 Ill
 

 We have held that classification of a product as “food” involves “ ‘complex chemical and pharmacological considerations,’ and ‘determination of technical and scientific questions.’ ”
 
 Biotics,
 
 710 F.2d at 1377 (citations omitted). In such cases, a district court should decline to review anything less than a final administrative determination on the classification of the product.
 
 Id.
 
 at 1377.
 
 See also Estee Lauder,
 
 
 *564
 
 727 F.Supp. at 4-5 (the decision to classify a product as a “food additive” is a fact-based determination and judicial review pri- or to final agency action would “deny the [FDA] the full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding”).
 

 DSC seeks to distinguish
 
 Biotics
 
 on the grounds that the FDA has completed its factual investigations regarding CoQlO. In essence, DSC claims that there is no need to defer to agency expertise in making a factual determination when the agency has already made up its mind. To support its argument, DSC cites the FDA seizures.
 
 [3]
 

 Even if the FDA has been consistent in its approach to products containing CoQlO, seizures in themselves do not amount to a final agency position on all uses of CoQlO. As' DSC points out, FDA’s motions for summary judgment in other eases involving CoQlO assume that the classification decision in those cases could be reviewed as a matter of law. However, the FDA is not bound by a previous position taken in a different case with different facts. The district court correctly held that the classification of “foods” and “food additives” is not a purely legal determination; the FDA has not waived its right to make that determination by taking a legal position in separate actions.
 

 IV
 

 The final element of the ripeness inquiry is hardship. A party must show that withholding judicial review would result in direct and immediate hardship and would entail more than possible financial loss. "
 
 Winter,
 
 900 F.2d at 1325. The district court found DSC’s risk of additional seizures and injunction actions “too speculative to warrant judicial intervention.”
 

 DSC claims the district court erred in failing to distinguish between the potential risks of tentative FDA policy statements and the very real liabilities imposed by a final, announced enforcement position and actual seizures. Again, DSC’s position assumes that the FDA has made a final determination as to the general status of CoQlO. In light of our rejection of DSC’s finality argument, we hold the district court correctly found that DSC failed to show sufficient hardship to require bypassing final agency action by the FDA.
 

 V
 

 Although we have indicated that the traditional exhaustion requirement applies to one seeking judicial review of FDA status determinations, the requirement is not absolute.
 
 See Biotics,
 
 710 F.2d at 1378. Exhaustion will not be required if administrative remedies are “inadequate or not efficacious” or where pursuit of administrative remedies would be a “futile gesture.”
 
 Id,.; Winter,
 
 900 F.2d at 1326.
 

 DSC does not dispute the availability of administrative remedies. Rather, it claims that exhaustion prihciples do not apply when the issue involved is a legal one. As previously discussed, classifications of food and food additives are fact-based determinations.
 

 DSC also claims that pursuing administrative remedies is futile when the agency has already made a final determination. Contending that remedies such as a citizen petition can take over a year to be resolved, DSC claims this wrongly subjects its members to the risk of future seizures and possible criminal fines.
 

 The “futility” and “risk” arguments both stand on the assumption that the FDA has made a final determination regarding the classification of CoQlO. Because we hold otherwise, the most DSC has shown is that the pursuit of administrative remedies may be time consuming. This is insufficient justification for bypassing agency expertise and invoking the jurisdiction of the federal courts. The district court’s dismissal for want of subject matter jurisdiction is
 

 AFFIRMED.
 

 [1]
 

 .
 
 Compare Premo Pharmaceutical Lab., Inc. v. United States,
 
 629 F.2d 795, 799 (2d Cir.1980) (holding that referring the issue to FDA would be "wasteful and duplicative” in case where FDA had filed seizure actions after rejecting Premo’s attempt to file drug with agency);
 
 and Natick Paperboard Corp. v. Weinberger,
 
 498 F.2d 125, 129 (1st Cir.1974) (holding that district court had jurisdiction to grant declaratory relief where the FDA had made announcement that it would seize "certain food-packaging materials containing more than 10 ppm of PCB’s”),
 
 with Schering Corp. v. Heckler,
 
 779 F.2d 683, 686 n. 18 (D.C.Cir.1985) (holding FDA seizure action did not constitute final agency action).
 

 [2]
 

 . The cases are also distinguishable on the ground that, unlike the plaintiffs in
 
 Premo
 
 and
 
 Natick,
 
 DSC has made no attempt to use»-available administrative remedies. In
 
 Natick,
 
 the plaintiffs filed an objection to the FDA regulation insofar as it affected their product.
 
 Natick,
 
 498 F.2d at 126. The Commissioner of Food and Drugs then announced that, until he reached a final decision on the objections, he would enforce
 
 de facto
 
 compliance with the new regulation by recommending seizure of any product that violated the, challenged regulation.
 
 Id.
 
 In
 
 Premo,
 
 plaintiffs initially filed a new drug application with the FDA.
 
 Premo,
 
 629 F.2d at 799. The FDA found the data submitted with the application insufficient and requested further evidence.
 
 Id.
 

 [3]
 

 . DSC also attempts to use the FDA expert testimony from a separate case in support of its argument that the agency has come to a conclusion about the status of CoQlO. As previously discussed, this testimony is not part of the record on appeal.