**SAN DIEGO COUNTY GUN RIGHTS COMMITTEE, Mark Bruce Skane, Henri Jon Donald Buettner, John Wallner, and San Diego Militia, Plaintiffs,**

v.

**Janet RENO, Attorney General of the United States of America; Frank Newman, acting Secretary of the Treasury; Bureau of Alcohol Tobacco and Firearms, Defendants.**

No. CV 95–27 H(AJB).

United States District Court,
S.D. California.

May 17, 1995.

Peter D. Lepiscopo, San Diego, CA, for Plaintiffs.

Andrea Newmark, Department of Justice, Civil Division, Washington, D.C., for Defendants.

### ORDER GRANTING DEFENDANTS MOTION TO DISMISS WITHOUT LEAVE TO AMEND

HUFF, District Judge.

Plaintiffs have filed a complaint challenging the constitutionality of the Violent Crime Control and Law Enforcement Act of 1994. Defendants have responded with a motion to dismiss, or in the alternative, for summary judgment. Having reviewed the papers submitted by both parties and heard oral argument on the matter, the court grants defendant's motion to dismiss for lack of jurisdiction.

### BACKGROUND

The Gun Control Act of 1968, ("GCA"), 18 U.S.C. §§ 921–30, imposes a comprehensive regulatory scheme over the manufacture and distribution of firearms. Under the GCA, a person or entity must first obtain a federal

license before engaging in the business of importing, manufacturing, or dealing in firearms or importing or manufacturing ammunition. 18 U.S.C. § 923(a). The GCA also restricts the receipt, possession and transfer of firearms. 18 U.S.C. § 922(g). In 1986, the GCA was amended to prohibit the transfer and possession of machineguns by private citizens. 18 U.S.C. § 922(o)(1).

On September 13, 1994, Congress passed the Violent Crime Control and Law Enforcement Act ("Crime Control Act") which amends the GCA. Essentially, the Crime Control Act places a freeze on the production of new weapons. Under the Act, for a period of ten years, with certain exceptions, it is unlawful for a person or entity to manufacture, transfer or possess a semiautomatic assault weapon or "transfer or possess a large capacity ammunition feeding device." 18 U.S.C. §§ 921–24. Among the prohibited weapons are semiautomatic rifles, pistols and shotguns. These outlawed weapons are specifically delineated in the Act by name and model. The Crime Control Act also prohibits copies or duplicates of such firearms as well as semiautomatic weapons that have two or more of the listed assault weapons features. 18 U.S.C. §§ 922(v)(1), 921(a)(30). The Act exempts certain weapons which are listed in Appendix A or described in subsection (v)(3) of the Act.

Furthermore, the Act amends the licensing provisions of the GCA. The new procedures require applicants for federal firearms licenses to certify that (1) the business to be conducted under the license is not prohibited by state or local law; and (2) the business will comply with the requirements of state and local law and will not be conducted until such requirements have been met. 18 U.S.C. § 923(d)(1)(F)(i) and (ii).

The Act also includes two major exceptions: a grandfather clause and an exception for government agencies and retired law enforcement officers. The grandfather clause exempts semiautomatic assault weapons or large capacity ammunition feeding devices that were lawfully possessed as of September 13, 1994, the date of the bill's enactment. 18 U.S.C. §§ 922(v)(2) and (w)(2).

The government agency provision exempts law enforcement agencies and their officers from the aegis of the Act. It also provides a limited exception for the "possession, by an individual who is retired from service with a law enforcement agency and is not otherwise prohibited from receiving a firearm, or a semiautomatic assault weapon transferred to the individual by the agency on such retirement." 18 U.S.C. §§ 922(v)(4)(C) and (w)(3)(C).

Violations of subsections 922(v), (w), or false certification under Section 923(d), may result in fines, imprisonment or both. 18 U.S.C. §§ 924(a)(1)(A), (B); 3571(b). False certification may also result in license revocation. 18 U.S.C. § 923(e).

Following the passage of the Act, the Bureau of Alcohol, Tobacco and Firearms ("ATF"), a division of the Treasury Department, sent a letter to all federally licensed firearms manufacture advising them that component parts in lawful possession on or before September 13, 1994 were subject to the grandfather clause. (Defs.' Exh. 1). A manufacturer or individual seeking a determination as to whether an item or group of items constitutes a semiautomatic assault weapon for purpose of the grandfather clause, or for any other purpose, may request a classification from ATF's Firearms Technology Branch. *Id.*

On January 9, 1995, plaintiffs filed this complaint challenging the constitutionality of the Crime Control Act and requesting declaratory and injunctive relief. The named plaintiffs are individuals as well as organizational entities including: the San Diego Militia; the San Diego Gun Rights Committee; John Wallner, the president of the San Diego Militia; Mark Bruce Skane, a licensed federal firearms dealer; and Henri Jon Donald Buettner, a retired Marine Corps officer. None of these plaintiffs have been prosecuted, arrested or incarcerated for violation of the Crime Control Act. Essentially, plaintiffs seek pre-enforcement review of the Act.

Defendants have filed a motion to dismiss the complaint for lack of jurisdiction. In the alternative, they request a motion for summary judgment. Plaintiffs oppose the motion. Having reviewed the papers submitted

by both parties, the court grants defendants' motion to dismiss for lack of jurisdiction.

## DISCUSSION

### A. *Standard*

■ Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "lack of jurisdiction over the subject matter." FED.R.CIV.P. 12(b)(1). In a motion to dismiss for lack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983).

■ When considering a 12(b)(1) motion to dismiss, the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). Consideration of material outside the pleadings do not convert a 12(b)(1) motion into one for summary judgment. *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir.1983).

### B. *Application of Standard*

Defendants argue that plaintiffs' complaint should be dismissed on grounds of justiciability. Specifically, defendants contend that plaintiffs lack standing and that their claims are not ripe for review. The court considers each of defendants' contentions in turn.

#### 1. *Standing*

■ Article III of the Constitution limits the judicial power of the federal court to "cases" and "controversies." Federal courts are presumed to lack jurisdiction "unless the contrary appears affirmatively on the record." *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir.1993).

■ To establish standing as required by Article III, plaintiffs must satisfy the following test: First, plaintiffs must demonstrate that they have suffered an "injury-in-fact," which is defined as an invasion of a legally-protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Plaintiffs must show that this injury is concrete and particularized and "actual or imminent, not conjectural or hypothetical." *Id.* (citations omitted).

■ "Second, there must be a causal connection between the injury and the conduct complained of." *Id.* That is, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (citations omitted).

■ Third and finally, plaintiffs must demonstrate that it is "likely" (as opposed to merely speculative) that a favorable decision by the court will redress the injury. *Id.* The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

■ Because plaintiffs allege that their constitutional rights have been infringed by the enactment of the Crime Control Act, the court has given careful and serious consideration to their complaint. However, before it can reach the merits of their claims, the court must first establish if it has jurisdiction over this case. Accordingly, the court considers each of plaintiffs' arguments in turn.

#### a. *Threat of Prosecution*

■ In the pre-enforcement facial challenge to a criminal statute, first "the plaintiff must show a genuine threat of imminent prosecution under the challenged statute to establish a justiciable case or controversy." *Washington Mercantile Ass'n v. Williams*, 733 F.2d 687, 688 (9th Cir.1984).

Here, plaintiffs assert that they "want to but are precluded" by the Crime Control Act from purchasing, possessing or transferring banned weapons which are manufactured after September 13, 1994. (Pls.' Complaint, ¶ 18(e)). Plaintiffs note that enforcement of the Crime Control Act would result in the arrest, prosecution, and/or incarceration of plaintiffs. *Id.*

**1422**

■ As a preliminary matter, plaintiffs' assertion that they "wish" or "intend" to engage in the prohibited conduct is not enough to establish injury under the Article III requirement. "Such 'some day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of 'actual or imminent' injury that our cases require." *Lujan,* 504 U.S. at 564, 112 S.Ct. at 2138.

■ As to the threat of prosecution, plaintiffs must "show a reasonable threat of prosecution for conduct allegedly protected by the Constitution." *Ripplinger v. Collins,* 868 F.2d 1043, 1047 (9th Cir.1989). An "imaginary or speculative" fear of prosecution is not enough. *Darring v. Kincheloe,* 783 F.2d 874, 877 (9th Cir.1986) (citing *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749–50, 27 L.Ed.2d 669 (1971)). Plaintiffs must do more than allege that government officials intend to enforce the law. *See Poe v. Ullman,* 367 U.S. 497, 501, 81 S.Ct. 1752, 1754–55, 6 L.Ed.2d 989 (1961) (finding no immediate threat of prosecution where appellants alleged that State Attorney intended to "prosecute any offenses under [state] law" including the statute at issue).

Where plaintiffs have been warned that they will be prosecuted for violating a criminal statute, the courts have found the threat of prosecution to be imminent and an appropriate basis for standing. *Steffel v. Thompson,* 415 U.S. 452, 476, 94 S.Ct. 1209, 1224, 39 L.Ed.2d 505 (1974); *American–Arab Anti–Discrimination Comm. v. Thornburgh,* 970 F.2d 501, 508 (9th Cir.1991); *Ripplinger,* 868 F.2d at 1047. For example, in *Steffel,* officials had warned plaintiff on two occasions to stop distributing handbills or face prosecution. In fact, plaintiff's companion had already been prosecuted. Thus, the Court found that plaintiff had "succeeded in objectively showing that the threat of imminent arrest, corroborated by the actual arrest of his companion, has created an actual controversy between himself and the agents of the State." *Id.* at 476, 94 S.Ct. at 1224.

Similarly in *American–Arab,* the Ninth Circuit found that appellants had standing because they had previously been charged for violating the statute at issue. *Id.* at 508. As the panel observed, "[e]ach case in which the government already has ventured in to prosecution underscores the government's willingness to use the challenged provisions ..." *Id.* Furthermore, appellants provided credible and objective evidence bolstering their fear of future prosecution.

Here, plaintiffs concede that they have not been threatened with arrest, prosecution or incarceration nor have plaintiffs demonstrated that "a prosecution is likely, or even that a prosecution is remotely possible." *Younger,* 401 U.S. at 42, 91 S.Ct. at 749. In their complaint, plaintiffs merely assert that might be arrested or prosecuted should they violate the statute. Furthermore, at oral argument, plaintiffs' counsel, Peter LePiscopo, represented to the court that none of the plaintiffs whom he represents are under any threat of prosecution. Therefore, the court finds that in this instance, plaintiffs' fear of prosecution is merely "speculative." *Id.*

■ Furthermore, plaintiffs' implication that the statute, as enforced, has a "chilling" effect on their desire to purchase the outlawed guns and weaponry will not in and of itself establish standing. "Every criminal law, by its very existence, may have some chilling effect on personal behavior. That is the reason for its passage." *Doe v. Duling,* 782 F.2d 1202, 1206 (4th Cir.1986). However, except for cases involving core First Amendment rights, the "existence of a 'chilling effect' ... has never been considered a sufficient basis in and of itself, for prohibiting" the enactment of a criminal statute. *Younger,* 401 U.S. at 51, 91 S.Ct. at 753. As the Supreme Court has noted, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972). Accordingly, the court finds that plaintiffs' allegations that enactment of the Crime Control Act has a "chilling effect" on the exercise of their constitutional rights cannot support a finding that plaintiffs have standing.

### b. *Economic Injury*

Second, plaintiffs attempt to support their claim of standing by alleging economic injury. Plaintiffs contend that they are unable to exercise freely their rights under the Second Amendment because the Crime Control Act has caused the price of grandfathered weapons, ammunition and parts to increase. (Pls.' Complaint ¶ 18(a)–(d)). Plaintiffs allege that the price of the banned devices and grandfathered arms have increased "anywhere from 40% to 100% as a direct consequence of" sections 922(v)(1) and 922(w)(1). (Pls.' Complaint, ¶ 18(a)).

While economic injury can constitute injury-in-fact, *Central Arizona Water Cons. Dist v. U.S. EPA*, 990 F.2d 1531, 1537 (9th Cir.), *cert. denied*, 510 U.S. 828, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993), the court finds that plaintiffs' assertion of economic injury alone cannot satisfy the requirements of standing. Besides establishing injury-in-fact, plaintiffs must also demonstrate that their alleged economic injury is fairly traceable to the Crime Control Act. *Lujan*, 504 U.S. at 559–61, 112 S.Ct. at 2136. The court finds that causation is, at best, speculative in this context. As the D.C. Circuit has observed, "[w]here ... injury is alleged to occur within a market context, the concepts of causation and redressability become particularly nebulous and subject to contradictory, and frequently unprovable, analyses." *Common Cause v. Dep't of Energy*, 702 F.2d 245, 251 (D.C.Cir. 1983).

Nothing in the Crime Control Act directs manufacturers or dealers to raise the price of assault weapons. Furthermore, the Crime Control Act is not the only relevant piece of legislation in California. California Penal Code §§ 12275–90 also ban the use, manufacture and transfer of specifically delineated assault weapons. Thus, the Crime Control Act is not the sole factor effecting the price of the grandfathered weaponry. Indeed, a finding by the court that the Act had a significant impact on the increase in prices would be merely speculative at best.

Moreover, here, it is not the defendants who have raised the prices of the weapons at issue, but third parties such as weapon dealers and manufacturers. Under *Lujan*, an injury which is "th[e] result [of] independent action of some third party not before the court," does not satisfy the requirements of Article III. *Id.* Accordingly, the court finds that plaintiffs economic injury does not satisfy the Article III requirements.

Finally, the court has also evaluated the prudential considerations bearing on standing as they relate to plaintiffs' economic injury. The court finds that as to these allegations of economic harm, plaintiffs' claim of injury amounts only to a "generalized grievance." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982). Where "the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant the exercise of jurisdiction." *Western Mining Council v. Watt*, 643 F.2d 618, 632 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981) (citations omitted). Here, an increase in the price of grandfathered weapons affects not only the named plaintiffs, but any citizen who wishes to purchase such a weapon. As such, in the context of particularized considerations, the court does not find that jurisdiction is warranted on grounds of economic injury to plaintiffs.

### c. *Whether Enactment and Existence of the Crime Control Act Hinders Plaintiffs' Exercise of Their Constitutional Rights*

Third, plaintiffs contend that the mere existence and enactment of the Crime Control Act hinders their ability to exercise their constitutional rights. (Pls.' Complaint, ¶ 18). However, as the Ninth Circuit noted in *Western Mining Council*, "the mere existence of a statute which may or may not ever be applied to plaintiffs, is not sufficient to create a 'case or controversy' within the meaning of Article III." *Id.* at 627 (citations omitted). Thus, the court finds that plaintiffs' assertion regarding the enactment and existence of the Crime Control Act does not establish standing.

#### d. *Government Access Exception*

■ Fourth, plaintiffs argue that the government access exception constitutes injury-in-fact. Plaintiffs contend that the ban on weapons combined with the exception for state and governmental entities "place[s] in the hands of government officials firearms that are superior to those possessed by citizens." (Pls.' Complaint, ¶ 18(g)).

Under the Crime Control Act, however, the grandfather clause does allow plaintiffs to possess the outlawed weaponry so long as the items in question were in existence on or before September 13, 1994. The Act does not ban assault weapons and their accoutrements outright; it was merely intended to act as a "freeze on the production of new weapons." 139 Cong.Rec. S1540. Thus, the court does not find that plaintiffs' contention constitutes an injury-in-fact as contemplated by *Lujan.*

#### e. *Standing as to Organizational Plaintiffs and Individual Plaintiff Wallner*

■ For an association to assert standing, the group must allege that (1) its members otherwise have standing to sue in their own right; (2) the interests sought to be protected are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested requires that the members participate individually in the suit. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

■ The San Diego Militia and the San Diego Gun Rights Committee allege that they have standing to sue because their members "are directly injured and affected" by the Crime Control Act and therefore the "individual members have standing to sue in their own right." (Pls.' Complaint, ¶¶ 6, 10). As noted above, plaintiffs have failed to establish a threat of imminent prosecution and plaintiffs' additional arguments do not demonstrate an injury-in-fact as defined by *Lujan.*

Thus, to the extent that the San Diego Militia and the San Diego Gun Rights Committee assert standing on behalf of their members, the court finds that the two groups lack standing. Furthermore, the court finds that individual plaintiff Wallner, who is president of the San Diego Militia, has failed to demonstrate injury-in-fact that would establish standing to sue.

#### f. *Standing as to Individual Plaintiff Skane*

■ In addition to asserting the arguments of his fellow plaintiffs, Skane contends that the Crime Control Act has resulted in injury to him because it forces him to comply with San Diego Municipal Ordinances in violation of his right to privacy. (Pls.' Complaint, ¶¶ 64(a)–(g)).

Subsections 923(d)(1)(F)(i) and (ii) require Skane, as a federal arms licensee, to comply with all state and local laws. As a preliminary matter, the court finds that this subsection does not apply to Skane. At oral argument, the government represented that Skane is not a current license applicant and that his current license does not expire until November 1997. Accordingly, the statute does not apply to Skane and he has failed to demonstrate how the subsection constitutes injury-in-fact as related to his status as a licensee. Thus, the court finds that Skane lacks standing to challenge the statute.

#### g. *Standing as to Individual Plaintiff Buettner*

■ Individual plaintiff Buettner contends that the Crime Control Act is unconstitutional because it allows retired law enforcement officers to possess an assault weapon, but makes no special provision for retired military officers. (Pls.' Complaint, ¶¶ 58–59). Buettner is a retired Marine officer who is trained in the use of assault weapons and formerly worked as a marksmanship instructor. *Id.* at ¶ 57.

Under subsections 922(v)(4)(C) and (w)(3)(C), a retired law enforcement officer who is presented with a semiautomatic weapon or large capacity feeding device by his agency upon his retirement may keep that weapon.

Buettner retired from the Marine Corps in 1990 and upon his retirement was given no such weapon. The court does not find that Buettner's allegation of disparate treatment

satisfies the requirement that he demonstrate a "concrete and particularized" injury. Moreover, to satisfy the standing requirements of Article III, Buettner must demonstrate that it is "likely" (as opposed to merely speculative) that a favorable decision by this court will redress the injury. *Lujan,* 504 U.S. at 559–61, 112 S.Ct. at 2136. It is unclear how in this context, injunctive relief would cure Buettner's purported injury. Accordingly, the court finds that as to these claims, Buettner lacks standing.

## 2. *Ripeness*

■■■■■ Defendants also contend that plaintiffs' claims are not ripe for review. Ripeness is peculiarly a question of timing. *American–Arab,* 970 F.2d at 510. To determine whether an issue is ripe for review, the court must (1) determine whether the issues are fit for judicial decision and (2) consider whether the parties will suffer hardship if the court declines to consider the issues. *Id.* (citing *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967)).

■■■■ In terms of pre-enforcement review of a statute, an issue is not fit for review "[i]n the absence of factual context upon which to rely in formulating a decision." *American–Arab,* 970 F.2d at 511–12. As the Ninth Circuit has observed, courts "should not be forced to decide ... constitutional questions in a vacuum." *Id.* at 511.

■■■■ Here, plaintiffs seek pre-enforcement review of a criminal statute. However, no factual context upon which this court can base its decision currently exists. In regards to plaintiffs' claims of vagueness, overbreadth and ambiguity, the lack of factual context raises a particular problem: because the Crime Control Act does not implicate First Amendment rights, it may be challenged for vagueness *only as applied. United States v. Martinez,* 49 F.3d 1398, 1403 (9th Cir.1995).

■■■■ Furthermore, the court finds that plaintiffs have not resorted to the administrative process to clarify the meaning of the statute. Where persons challenging a law on vagueness or ambiguity grounds "have the ability to clarify [the law's] meaning by [their] own inquiry, or by resort to an administrative process," they should do so prior to invoking the jurisdiction of the federal courts. *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1236 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). Here, according to the government, plaintiffs can clarify any questions they might have about assault weapons and ammunition covered by the Crime Control Act by contacting the ATF's Firearm Technology branch to have those items classified.

■■■■ . Finally, as to the second prong of the ripeness test, the court finds that this is not a case where "delayed resolution" would be injurious to plaintiffs. The Crime Control Act places no affirmative duties on plaintiffs nor does it subject them to sanctions should they follow the law. Plaintiffs are not currently under any threat of prosecution and if they should be charged, plaintiffs will not be precluded from raising their constitutional challenges to the court. Accordingly, having considered the issue of ripeness, the court finds that at this time, plaintiffs' claims are not ripe for review.

## C. *Leave to Amend*

■■■■ At oral argument, plaintiffs' counsel requested that if this court decided to grant defendants' motion to dismiss, the dismissal be granted with leave to amend. The court denies plaintiffs request. It notes that plaintiffs have already had one opportunity to cure the jurisdictional defects of their complaint and still were unable to correct those problems. Plaintiffs' counsel conceded that none of his clients is facing criminal prosecution. Accordingly, the court finds that granting leave to amend at this juncture is inappropriate.

## CONCLUSION

The court takes very seriously any allegations that plaintiffs' constitutional rights have been violated or infringed. Plaintiffs may raise as defenses to any criminal prosecution

the argument which they advance here. That is not a meaningless exercise. Recently, the United States Supreme Court in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), upheld the reversal of a criminal conviction for possession of a handgun in violation of 18 U.S.C. § 922(g)(1)(A) because the law exceeded Congress' power under the Commerce Clause.

This court takes no position on the merit or lack of merit of plaintiffs' challenges. Before the court can reach the merits of the case brought here, the court must first examine if it properly has jurisdiction. Having reviewed plaintiffs' numerous claims of injury and listened to oral argument on this matter, the court finds that plaintiffs' have failed to clear the jurisdictional bars of standing and ripeness. Because it lacks jurisdiction, the court cannot address the merits of plaintiffs' constitutional claims.

Accordingly, the court grants defendants' motion to dismiss without leave to amend.

IT IS SO ORDERED.