Paul E. MERRELL, Plaintiff-Appellant,

v.

Lee THOMAS, Defendant-Appellee,

and

Ciba-Geigy Corporation, et al.,
Defendants-Intervenors.

No. 85–4026.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 1986.

Decided Dec. 31, 1986.

Michael Axline, John E. Bonine, Eugene, Or., for plaintiff-appellant.

Kenneth W. Weinstein, McKenna, Conner & Cuneo, Peter R. Steenland, Dept. of Justice, John A. Bryson, Land & Natural Resource Div., Washington, D.C., for defendant-appellee.

Before SNEED, KENNEDY, and KOZINSKI, Circuit Judges.

SNEED, Circuit Judge:

This appeal raises a single legal issue: whether the Environmental Protection Agency (EPA) must comply with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–4370a, when it registers pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y. The district court, 608 F.Supp. 644, ruled that it need not. After examining FIFRA's registration procedure, its registration standard, and the applicable review procedures, we conclude that Congress did not intend that the EPA should comply with NEPA. Therefore, we affirm.

I.

FACTS AND PROCEEDINGS BELOW

Appellant Paul E. Merrell, plaintiff below, sued to enjoin the EPA from continuing to register seven herbicides which his local road department sprayed along the road leading to his wife's farm. Merrell charged that the registrations were invalid because the EPA and its predecessor agency had not made public the information on which they were based. Merrell alleged that the EPA thereby violated NEPA and its implementing regulations, 40 C.F.R. §§ 1500.1–1508.28, particularly insofar as the EPA failed either to prepare a site-specific environmental impact statement (EIS)

for each right-of-way use registration, or to explain why no EIS was necessary under 42 U.S.C. § 4332(2)(C). Complaint for Injunctive Relief, Excerpt of Record (E.R.) at 1–10.

After defendant Ruckelshaus answered for the EPA, Merrell moved for partial summary judgment. Subsequently, the district court allowed as defendant intervenors Ciba-Geigy Corporation, Dow Chemical Company, Velsicol Chemical Company, the National Agricultural Chemicals Association, Oregonians for Food and Shelter, Monsanto Company, and E.I. Dupont De-Nemours & Company. Defendant and defendant intervenors moved for judgment on the pleadings. The National Resources Defense Council filed a brief in support of plaintiff's motion for summary judgment. On May 20, 1985, the district court entered summary judgment for defendant Thomas, who had been substituted for Ruckelshaus under Federal Rule of Civil Procedure 25(d). Merrell timely appealed on July 18, 1985.

## II.

### STANDARD OF REVIEW

This court reviews de novo a lower court's grant of summary judgment. Defendant is entitled to summary judgment if, viewing the evidence in a light most favorable to plaintiff, no genuine issue of material fact remains and defendant is entitled to judgment as a matter of law. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 764 (9th Cir.1986). If plaintiff will bear the burden of proof at trial as to an element essential to its case, and plaintiff fails to make a showing sufficient to establish the existence of that element, then the court may enter summary judgment against plaintiff. *Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## III.

### FIFRA'S REGISTRATION PROCEDURE

A. *Pre–1972 Procedures*

Since 1947, pesticides that move in interstate commerce have had to be registered with the Federal Government. FIFRA, Pub. L. No. 80–104, § 4(a), 61 Stat. 163, 167 (1947). To register a pesticide, an applicant had to submit its name, its label, the claims made for it and, "if requested," a description of tests made and their results. *Id.* Under the original act, an applicant who failed to meet even these minimal standards could nevertheless obtain a "protest registration" for his product. *Id.* § 4(c), 61 Stat. at 168. In 1964, Congress eliminated the protest registration. A disappointed applicant could instead request a referral to an advisory committee or a public hearing. Act of May 12, 1964, Pub. L. No. 88–305, § 3, 78 Stat. 190, 190–91. Otherwise, there was no opportunity for public participation.

In 1970, when FIFRA's pesticide registration procedure was as described above, Congress passed NEPA, Pub. L. No. 91–190, 83 Stat. 852 (1970). Section 102 of NEPA requires that:

all agencies of the Federal Government shall—

. . . .

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(2). This describes the EIS. Preparation of an EIS is a procedural

obligation designed to assure that agencies give proper consideration to the environmental consequences of their actions. *Aberdeen & R. R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 422 U.S. 289, 319, 95 S.Ct. 2336, 2355, 45 L.Ed.2d 191 (1975). The question before us is, did Congress intend to superimpose NEPA's procedures on top of the FIFRA registration procedure?

### B. *The 1972 Amendments*

After 1970, the EPA did not change its FIFRA regulations to require preparation of EIS's. In 1972, Congress comprehensively amended FIFRA, in part in response to "increasing public concern over the uses and application of pesticides [reflecting] expanded interest in environmental protection by many citizens." H.R.Rep. No. 511, 92d Cong., 1st Sess. 4 (1971). Yet Congress gave no indication that it thought NEPA would apply. Instead, Congress created a registration procedure within FIFRA to ensure consideration of environmental impact—a procedure that apparently made NEPA superfluous. Congress also created limited opportunities for public notice and public participation in FIFRA's registration procedure. But the 1972 amendments did not make FIFRA a carbon copy of NEPA. It reflected a compromise between environmentalists, farmers, and manufacturers. *Id.* at 5. The differences between FIFRA's registration procedure and NEPA's requirements indicate that Congress did not intend that NEPA apply.

First, if an application for a pesticide registration involved a new active ingredient or a changed use pattern, the 1972 amendments required the Administrator to place a notice in the Federal Register before he made his decision. Federal Environmental Pesticide Control Act of 1972, Pub. L. No. 92-516, § 2, 86 Stat. 973, 980

(amending FIFRA section 3(c)(4)). This is the only provision for public notice prior to a decision to register a pesticide. It obviously falls short of an EIS requirement, both because the Administrator will not have to publish the notice with respect to many applications, and because the notice does not contain the information contained in an EIS.

Second, the 1972 amendments required the Administrator to act "as expeditiously as possible" on an application, *id.*, 86 Stat. at 980 (amending FIFRA section 3(c)(3)), and Congress expected him to reach a decision within three months of receiving an application, H.R.Rep. No. 511, 92d Cong., 1st Sess. 20 (1971). Such a time frame is incompatible with the lengthy research and hearings that are ordinarily part of preparing an EIS. *Compare Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 788–91 & 789 n. 10, 96 S.Ct. 2430, 2438–39, 2438 n. 10, 49 L.Ed.2d 205 (1976) (statutory requirement that filing take effect in thirty days means that NEPA cannot apply) *with Jones v. Gordon*, 792 F.2d 821, 826–27 (9th Cir.1986) (agency regulation requiring publication of notice "as soon as practicable" after application is deemed sufficient does not prevent NEPA from applying).

Third, the 1972 amendments provided that the Administrator would make available to the public the information on which he based a decision to register a pesticide within thirty days of that decision. Federal Environmental Pesticide Control Act of 1972, § 2, 86 Stat. at 980 (amending FIFRA section 3(c)(2)). But the Administrator would not release information if it was test data for which a subsequent user would have to compensate an applicant, or if it contained trade secrets. *Id.*, 86 Stat. at 979–80, 989 (amending FIFRA sections 3(c)(1)(D), 3(c)(2), 10(b)). NEPA does not contain equivalent restrictions.[1]

---

**1.** FIFRA's disclosure limitation provisions do not necessarily conflict with the letter of NEPA. NEPA makes EIS's available to the public, subject to the requirements of the Freedom of Information Act (FOIA), 5 U.S.C. § 552. 42 U.S.C. § 4332(2)(C); *see Weinberger v. Catholic Action/Peace Educ. Project*, 454 U.S. 139, 142–43,

102 S.Ct. 197, 201, 70 L.Ed.2d 298 (1981). FOIA exempts from public disclosure matters specifically exempted by other statutes, trade secrets, and privileged or confidential commercial information. 5 U.S.C. § 552(b)(3)–(4). These exemptions could encompass all the information that FIFRA withholds from the public. But if

Thus, when Congress revised FIFRA in 1972, it designed a registration procedure with public notice and public participation provisions that differ materially from those that NEPA would require.

### C. *Post–1972 Amendments*

When Congress amended FIFRA in 1975, 1978, and 1984, the EPA had interpreted FIFRA so as not to require compliance with NEPA. And "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *Commodity Futures Trading Comm'n v. Schor*, —— U.S. ——, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–62, 40 L.Ed.2d 134 (1974) (footnotes omitted)).

The 1978 amendments to FIFRA provide further evidence that Congress did not intend to affix NEPA to FIFRA. These amendments made important modifications to the registration procedure. They responded to a crisis: the registration process had "come to a virtual halt" because of litigation spawned by the data compensation and trade secret provisions of the 1972 amendments. H.R.Rep. No. 663, 95th Cong., 1st Sess. 18, *reprinted in* 1978 U.S. Code Cong. & Ad.News 1988, 1991. The 1978 amendments aimed to lighten the "regulatory burdens upon the industry, pesticide users, and non-Federal regulatory agencies." S.Rep. No. 334, 95th Cong., 1st Sess. 26–27 (1977). To this end, they created a "conditional registration procedure" that waived or postponed some data requirements for registering certain pesticides. Federal Pesticide Act of 1978, Pub. L. No. 95–396, § 6, 92 Stat. 819, 825–26. They also liberalized the standards for registering pesticides for minor uses, required the Administrator to promulgate simplified registration regulations, and permitted the Administrator to waive proof of efficacy. *Id.* §§ 3–5, 92 Stat. at 824–25. Finally, they rewrote the trade secret disclosure section, *id.* § 15, 92 Stat. at 829–32, striking a careful balance between "the legitimate right of the public to know the basis for agency decisions and the right of a business to see that the manufacturing process and other trade secret information controlled by the Act are not disclosed for the commercial advantage of competing business interests," H.R.Rep. No. 663, 95th Cong., 1st Sess. 18–19, *reprinted in* 1978 U.S.Code Cong. & Admin.News 1988, 1991–92. The Supreme Court upheld the new disclosure provisions against a Fifth Amendment taking clause challenge. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1983).

To apply NEPA to FIFRA's registration process would sabotage the delicate machinery that Congress designed to register new pesticides. It would increase a regulatory burden that Congress intentionally lightened in 1978 and create new opportunities for litigation where litigation was recently quelled. "NEPA was not intended to repeal by implication any other statute." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 694, 93 S.Ct. 2405, 2419, 37 L.Ed.2d 254 (1973). Therefore, we will not apply NEPA here.

Congress is contemplating further changes to FIFRA. Both the House and the Senate passed bills amending FIFRA during the second session of the 99th Congress. 132 Cong.Rec. H11,172–201 (daily ed. Oct. 16, 1986); 132 Cong.Rec. S15,354–81 (daily ed. Oct. 7, 1986). Congress adjourned without enacting either bill. Both bills create new opportunities for public access to health, safety, and environmental data before the Administrator registers a pesticide containing a new active ingredient or authorizes the initial food use of an active ingredient. 132 Cong.Rec. H11,172–

---

NEPA applied to FIFRA's registration procedure, it would provide an additional legal basis on which disclosure could be sought. And the standards for disclosure developed under NEPA and FOIA might well differ from the standards developed under FIFRA.

73 (daily ed. Oct. 16, 1986) (section 101); 132 Cong.Rec. S15,355–56 (daily ed. Oct. 7, 1986) (section 101). If Congress expected the EPA to prepare an EIS before every registration, it would not have considered these limited disclosure provisions.

The Senate bill includes a declaration that analyses in support of registration are equivalent to an EIS and may be relied on by other federal agencies to comply with NEPA. 132 Cong.Rec. S15,376 (daily ed. Oct. 7, 1986) (section 820A). Senator Symms, who proposed the amendment, intended to excuse the Bureau of Land Management and other agencies from preparing EIS's before implementing programs using pesticides. *Id.* at S15,344–45. Senator Symms was not concerned with defining the EPA's obligations under NEPA. Therefore, his proposal to declare analyses in support of registration to be equivalent to an EIS does not imply that an EIS is currently necessary for each FIFRA registration. The Symms amendment "merely restates current law," for the most part. *Id.* at S15,344. We infer that Congress believes that analyses in support of registration currently are an adequate substitute for an EIS in the FIFRA context. Congress does not intend to make NEPA apply.

## IV.

### FIFRA'S REGISTRATION STANDARD

As enacted in 1947, FIFRA defined a registration standard that took no account of environmental effects. FIFRA, Pub. L. No. 80–104, § 4(b), 61 Stat. 163, 167–68 (1947). The 1972 amendments added two environmental criteria. The Administrator must determine that the pesticide "will perform its intended function without unreasonable adverse effects on the environment" and that "when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment." Federal Environmental Pesticide Control Act of 1972, Pub. L. No. 92–516, § 2, 86 Stat. 973, 980–81 (amending FIFRA section 3(c)(5)) (codified at 7 U.S.C.

§ 136a(c)(5)). Hence, two years after enacting NEPA, Congress amended FIFRA to require the EPA to consider environmental effects. The FIFRA amendment would have been superfluous if Congress intended NEPA to apply.

Yet in amending FIFRA, Congress refrained from incorporating the NEPA standard without modification. FIFRA's standard for denying registration, "unreasonable adverse effects on the environment," *id.*, differs both from NEPA's standard for preparing an EIS, "significantly affecting the quality of the human environment," 42 U.S.C. § 4332(2)(C), and from NEPA's definition of the scope of the EIS, "the environmental impact of the proposed action," *id.* The FIFRA standard distinctly balances the environmental harm of using a pesticide against its economic, social, and environmental benefits. 7 U.S.C. § 136(bb).

For example, unlike NEPA, FIFRA explicitly accommodates agriculture's need for pesticides—even environmentally risky pesticides. The 1975 amendments to FIFRA were primarily concerned with increasing agriculture's influence on registration decisions. They require the Administrator, before issuing a notice of his intent to cancel or limit the registration of a pesticide, to prepare an "agricultural impact statement" and send it to the Secretary of Agriculture for comment and possible publication. Act of Nov. 28, 1975, Pub. L. No. 94–140, § 1, 89 Stat. 751, 751 (codified at 7 U.S.C. § 136d(b)). Commenting on this provision, the Senate Agriculture and Forestry Committee said:

Because the basic thrust and principal responsibility of EPA are to protect the environment, the Committee does not see a need to broaden the impact statement to include the environment. There is clearly a need to consider the impact of EPA's decisions on agriculture if balance is to be achieved.

S.Rep. No. 452, 94th Cong., 1st Sess. 9, *reprinted in* 1975 U.S.Code Cong. & Admin.News 1359, 1366. Therefore, FIFRA's registration standard, unlike NEPA's stan-

dard, reflects the need to balance environmental and agricultural impacts. This is a compromise adopted by Congress that should not be overturned by judges.

FIFRA's registration standard deviates from NEPA's standard in another way. The 1972 amendments to FIFRA specified that "[t]he Administrator shall not make any lack of essentiality a criterion for denying registration of any pesticide." Federal Environmental Pesticide Control Act of 1972, Pub. L. No. 92–516, § 2, 86 Stat. 973, 981 (amending section 3(c)(5)) (codified at 7 U.S.C. § 136a(c)(6)). This means that "registration cannot be denied simply because the existence of an alternate means of control makes the new pesticide not essential." S.Rep. No. 838, 92d Cong., 2d Sess. 20, *reprinted in* 1972 U.S.Code Cong. & Admin.News 3993, 4011. NEPA, however, explicitly requires that an EIS discuss "alternatives to the proposed action," 42 U.S.C. § 4332(2)(C)(iii), which implies that a course of action less environmentally harmful is to be preferred. This implication is not embodied in FIFRA. Judges should not engraft it on to FIFRA.

It is important to note that FIFRA's registration standard does not preclude all public participation in weighing environmental effects. To expedite pesticide registration, the EPA develops "registration standards" for products containing certain active ingredients. The standards describe what data the Administrator will require before registering a pesticide containing a given active ingredient. Under new regulations, the EPA will publish an annual docket of registration standards under consideration and will invite public comment. EPA Pesticide Registration Standards, 40 C.F.R. §§ 155.23–155.34. Developing registration standards admittedly is a more general process than is preparing a site-specific EIS. Nevertheless, public participation at this level and in this manner is meaningful. We are reluctant to make redundant this limited public participation by invoking NEPA's requirement that an EIS be prepared. Even though the ultimate source of political power is the people, it does not follow that their participation in

the processes of government at all levels always should be increased by all available means. Here, as elsewhere in life, a balance must be struck between, in this instance, participation and delegation. We see no reason to fault the balance that EPA has struck with respect to "registration standards."

Our position that NEPA does not apply to pesticides registered under FIFRA has been taken by other courts as well. Speaking in terms of the "functional equivalence" of the EPA's procedures to NEPA's procedures, these courts conclude that formal compliance with NEPA would be wasteful and redundant. *E.g.*, *Wyoming v. Hathaway*, 525 F.2d 66, 71–72 (10th Cir. 1975) (EPA need not prepare an EIS before cancelling or suspending registrations of three coyote poisons), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976); *Environmental Defense Fund, Inc. v. Environmental Protection Agency*, 489 F.2d 1247, 1254–56 (D.C.Cir.1973) (EPA need not prepare an EIS before cancelling registration of DDT with respect to nearly all uses); *Environmental Defense Fund, Inc. v. Blum*, 458 F.Supp. 650, 661–62 (D.D.C.1978) (EPA need not prepare an EIS before granting an emergency exemption to a state to use an unregistered pesticide). While we hesitate to adopt the "functional equivalence" rationale, we are confident that Congress did not intend NEPA to apply to FIFRA registrations.

## V.

### FIFRA'S AGENCY REVIEW PROVISIONS

Merrell's challenge to the registrations of the pesticides used near his wife's farm fail, insofar as it is based on the EPA's failure to comply with NEPA. But that does not mean that Merrell is without a remedy. FIFRA contains procedures for cancelling or suspending pesticide registrations that invite public participation at several points. Furthermore, FIFRA provides for judicial review of important EPA decisions.

If the Administrator decides to deny, cancel, or suspend a pesticide registration, he must notify the applicant and give public notice. 7 U.S.C. §§ 136a(c)(6), 136d(b), 136d(c). The district courts may review refusals to cancel or suspend registration. 7 U.S.C. § 136n(a).[2] Environmental organizations have acted under these notice and review provisions to challenge EPA refusals to cancel or suspend pesticide registrations. *E.g., Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 465 F.2d 528, 531-32 (D.C.Cir. 1972); *Environmental Defense Fund, Inc. v. Ruckelshaus,* 439 F.2d 584, 589 (D.C.Cir. 1971); *Environmental Defense Fund, Inc. v. Hardin,* 428 F.2d 1093, 1096 (D.C.Cir. 1970).

Another agency review process, the so-called "Special Review," is potentially available to Merrell. If "a validated test or other significant evidence rais[es] prudent concerns of unreasonable adverse risk to man or to the environment," the Administrator may initiate a public interim administrative review of a pesticide registration. 7 U.S.C. § 136a(c)(8). Under new regulations, "any interested person" may ask the Administrator to act under this section. 40 C.F.R. § 154.10. Because the Administrator must release information supporting an application within thirty days of granting a registration, 7 U.S.C. § 136a(c)(2)(A), the public will be aware of registrations that it might wish to challenge.

Merrell is dissatisfied with these opportunities because they do not enable him to participate in a registration decision *before* it is made, as would an EIS requirement. Reply Brief of Appellants at 5-6. He also emphasizes that the Administrator ultimately has discretion whether to initiate the process for suspending or cancelling a registration. *Id.* at 2-3.

The fact that FIFRA provides for substantial public participation only after a pesticide is registered does not make its review procedures illusory or worthless. In particular, FIFRA could provide Merrell with relief in this case. Merrell does not complain of pending applications for pesticide registration. Rather, he attacks use registrations for seven pesticides, most of which were approved years ago. Supplemental Excerpt of Record (S.E.R.) at 32-33. Cancellation or suspension of pesticide registrations therefore would be a suitable remedy.

Although FIFRA vests considerable discretion in the Administrator, interested persons can influence his decisions through petitions. Brief for Federal Appellee at 25-26. Merrell did telephone the EPA and demand that it immediately suspend the pesticide registrations of pesticides used near his wife's farm. S.E.R. at 1-6. Two weeks after his telephone calls, he filed this lawsuit. Merrell's rush to the courthouse does not lead us to conclude that public petitions to the Administrator are inevitably futile.[3]

FIFRA's review provisions do afford the public some opportunity to participate in pesticide registration decisions. The opportunity would be greater if NEPA applied. Congress has made its choice. We must abide by it.

AFFIRMED.

---

2. FIFRA also provides for appellate court review of EPA orders issued after a public hearing, if an adversely affected party so requests. 7 U.S.C. § 136n(b).

3. We do not hold that Merrell's conduct amounted to a failure to exhaust administrative remedies. If Merrell had sued to cancel or suspend pesticide registrations, such a holding might be appropriate on these facts. *See Merrell v. Thomas,* 608 F.Supp. 644, 647-48 (D.Or. 1985) (finding that Merrell failed to exhaust his administrative remedies). But Merrell sued instead to compel the EPA to comply with NEPA when registering pesticides under FIFRA. Faced with a similar suit against a different agency, we concluded that a plaintiff was not obliged to exhaust his statutory remedies, because 28 U.S.C. § 1331, NEPA, and section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702, combined to create an independent ground of jurisdiction. *Jones v. Gordon,* 792 F.2d 821, 824 (9th Cir.1986) (suit to set aside permit granted under the Marine Mammal Protection Act of 1972 because no EIS had been prepared). On that basis, we reach the merits in this case.